637 S.E.2d 591

**Daniel J. DAVID, Petitioner Below, Appellant**

v.

**COMMISSIONER OF THE WEST VIR-GINIA DIVISION OF MOTOR VEHI-CLES, Respondent Below, Appellee.**

No. 32859.

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 14, 2006.

Decided: May 12, 2006.

Dissenting Opinion of Justice Maynard June 30, 2006.

Concurring Opinion of Justice Benjamin July 31, 2006.

Carter Zerbe, Esq., Charleston, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, for Appellee.

STARCHER, J.

In this case we hold that the West Virginia Department of Motor Vehicles is responsible for the expert witness fees and attorney fees of a licensee who was denied due process of law in connection with a driver's license revocation proceeding.

## I.

### Facts & Background

The appellant, Daniel David, was charged on or about February 24, 2004, by Trooper C.L. Adkins of the West Virginia Department of Public Safety with driving under the influence of alcohol. On March 4, 2004, the appellee, the Commissioner of the West Virginia Department of Motor Vehicles ("DMV") issued an order revoking the appellant's driver's license for six months, effective April 8, 2004.

The appellant timely appealed and requested a hearing on the license revocation, and the revocation order was stayed pending the resolution of the appeal. A hearing before a DMV hearing examiner was scheduled by the DMV for October 4, 2004, at 12:30 p.m., at the DMV offices in Beckley, West Virginia. The appellant's counsel caused a subpoena to be issued by the DMV on July 14, 2004, and to be served on Trooper Adkins on September 13, 2004, requiring Trooper Adkins to attend the October 4 hearing.

The DMV subpoena to Trooper Adkins was issued pursuant to *W.Va.Code*, 17A–2–18 [1951], which states:

（a) The commissioner and officers of the department designated by him shall have authority to summon witnesses to give testimony under oath or to give written deposition upon any matter under the jurisdiction of the department. Such summons may require the production of relevant books, papers, or records.

(b) Every such summons shall be served at least five days before the return date, either by personal service made by any person over eighteen years of age or by registered mail, but return acknowledgment is required to prove such latter service. Failure to obey such a summons so served shall constitute a misdemeanor.

The fees for the attendance and travel of witnesses shall be the same as for witnesses before the circuit court.

(c) Any circuit court shall have jurisdiction, upon application by the commissioner, to enforce all lawful orders of the commissioner under this section.

The appellant, at substantial expense, retained an expert from the State of Virginia on the subject of field sobriety tests and breath testing. The expert traveled from Virginia to appear at the October 4, 2004 DMV hearing. The appellant, his counsel and witnesses, and the expert appeared at the DMV office in Beckley at 12:30 p.m. on October 4, 2004. Trooper Adkins did not appear at that time. Trooper Adkins apparently phoned the hearing examiner twice and telephonically obtained "continuances" lasting until 3:00 p.m., on the grounds that Trooper Adkins was in the Fayette County Magistrate Court in Fayetteville, West Virginia—about a half-hour drive from the Beckley location of the DMV hearing. The appellant and his counsel waited, assuming the hearing would begin at 3:00 p.m.; however, Trooper Adkins did not appear at the DMV hearing at 3:00 p.m. and the appellant and his counsel left at that time.

*W.Va.Code,* 17C–5A–2(b) [2004] addresses the issue of continuances of DMV hearings, and states in pertinent part:

> The commissioner may postpone or continue any hearing on the commissioner's own motion or upon application for each person for good cause shown. The commissioner shall adopt and implement by a procedural rule written policies governing the postponement or continuance of any such hearing on the commissioner's own motion or for the benefit of any law-enforcement officer or any person requesting the hearing, and such policies shall be enforced and applied to all parties equally. For the purpose of conducting the hearing, the commissioner shall have the power and authority to issue subpoenas and subpoenas duces tecum in accordance with the provisions of section one, article five, chapter twenty-nine-a of this code: *Provided,* That the notice of hearing to the appropriate law-enforcement officers by registered or certified mail, return receipt requested, shall constitute a subpoena to appear at the hearing without the necessity of payment of fees by the division of motor vehicles.

On or about October 7, 2004, the appellant's counsel received a copy of a written "continuance request," signed by a Fayette County assistant prosecuting attorney and apparently filed with the DMV, stating that Trooper Adkins had been in the Fayette County Magistrate Court and could not attend a 3:00 p.m. October 4, 2004 hearing in the appellant's DMV case. The Fayette County assistant prosecutor's "continuance request" was accompanied by a certificate of service indicating that the request was mailed to the appellant's counsel on October 5, 2004.[1]

Records from the Fayette County Magistrate Court reflect that Trooper Adkins had been informed—by seventeen separate "Notice[s] to Appear," all dated July 29, 2004—that Trooper Adkins' presence was required in the Fayette County Magistrate Court, on October 4, 2004, for a series of traffic and misdemeanor cases that were scheduled to begin at 10:00 a.m., 10:30 a.m., 11:00 a.m., and 11:30 a.m; there were no notices for hearings beginning later than 11:30 a.m. No subpoenas had been issued by the magistrate court to Trooper Adkins requiring his attendance at these hearings.[2]

1. Subsequently, the appellant's counsel also obtained from the appellee DMV a copy of a letter dated October 4, 2004, that was sent to the DMV from a Fayette County magistrate, stating that Trooper Adkins had several hearings "scheduled" on October 4, 2004, and that it would be impossible for him to be available for the appellant's DMV hearing.

2. *Magistrate Court Rules of Criminal Procedure* Rule 15 provides for the issuance of subpoenas by the magistrate court pursuant to the procedures in Rule 17 of the *Rules of Criminal Procedure for Circuit Courts.* A notice to appear from the magistrate court, of the type received by Trooper Adkins, is not a subpoena. Trooper Adkins was under a direct and specific subpoena to appear before the DMV hearing officer, and was not under a similar direct and specific legal compulsion to attend the magistrate court proceedings. In terms of Trooper Adkins' legal obligations, the DMV subpoena (unless he was excused from it in a proper fashion) "outweighed" his obligation to appear in magistrate court.

There is nothing in the record to suggest that Trooper Adkins sought to have the magistrate court cases continued, or that he informed the prosecutor's office or magistrate court that he had been *subpoenaed* to the appellant's DMV hearing. Nor does the record reflect any attempt by Trooper Adkins to continue the DMV hearing other than the phone calls on the day of the hearing and the apparently *"post hoc"* letters referenced above.

Subsequently, the DMV responded to the written continuance requests by issuing a letter ruling granting a continuance of the October 4, 2004 hearing and rescheduling it for March 9, 2005, on the ground that "[d]ue to an unexpected delay in Magistrate Court, the Arresting Officer was unable to appear for the scheduled administrative hearing."

On February 4, 2005, the appellant filed a petition for writ of prohibition and mandamus in the Circuit Court of Kanawha County, asking that the DMV be barred from further proceedings on the appellant's license suspension due to the agency's clear error in continuing the October 4, 2004 hearing. This petition was summarily denied by the circuit court on February 10, 2005. The appellant has appealed that denial to this Court.

The appellant states—without contradiction by the appellee—that he has expended all of the money that he can raise to hire an expert to testify in his case, and that he will be severely and unfairly prejudiced by his revocation case going forward without the services of the expert whom the appellant hired to come to the October 4, 2004 DMV hearing. The appellant argues that as a matter of law the appellee DMV's continuance of the hearing was improper, and that the license suspension proceedings against the appellant should be dismissed.

## II.

### *Standard of Review*

■ A writ of prohibition "lies as a matter of right whenever the inferior court (a) has not jurisdiction or (b) has jurisdiction but exceeds its legitimate powers and it matters not if the aggrieved party has some other remedy adequate or inadequate." *State ex rel. Valley Distributors, Inc. v. Oakley*, 153 W.Va. 94, 99, 168 S.E.2d 532, 535 (1969).

■ In the instant case, the circuit court's denial and dismissal of the appellant's petition for a writ of prohibition was summary. The circuit court stated no reasons for its ruling and made no findings; it appears that the denial and dismissal order may have been entered without the filing of a response by the appellee. Under these circumstances, without any findings or discretionary determinations by the lower court to which we might give deference, our review is *de novo*. *See* Syllabus Point 2, *Walker v. West Virginia Ethics Com'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

## III.

### *Discussion*

The standard and procedures for granting continuances of DMV administrative hearings, authorized by *W.Va.Code*, 17C–5A–2 [2004] (quoted *supra*), are set forth at W. Va.C.S.R. Sec. 91–1–3. Rules 3.8.1 and 3.8.2 state:

> 3.8.1. The Commissioner may grant the person requesting a hearing a continuance of the scheduled hearing. The person shall make the request for continuance in writing, and it must be received by the Commissioner at least five (5) days prior to the scheduled hearing date. The Commissioner shall grant the request if good cause is shown. Good cause shall include such reasons as serious illness, medical appointments, court appearances, or religious holidays. In no case may the Commissioner grant more than one continuance per party except as provided in Subdivisions 3.8.3 and 3.8.4.

> 3.8.2. In DUI hearings, the Commissioner may also grant a continuance to the arresting officer as prescribed in Subdivision 3.8.4.

■ Rule 3.8.1 rule specifically authorizes the issuance of continuances for "court appearances;" and, if timely invoked, would

have applied to Trooper Adkins' situation. To obtain a continuance under Rule 3.8.1, at least five days before the DMV hearing Trooper Adkins could (and should) have applied in writing for a continuance based on the seventeen notices to appear in the Fayette County Magistrate Court which advised him to appear at hearings in Magistrate Court. Trooper Adkins had notice of these magistrate court hearings for approximately two months before the October 4, 2004 DMV hearing. The appellee does not offer any explanation for Trooper Adkins' failure to utilize Rule 3.8.1 to seek a continuance of the DMV hearing.[3]

In addition to Rules 3.8.1 and 3.8.2, Rule 3.8.4 provides for "emergency continuances" of DMV hearings in limited circumstances, as follows:

> The Commissioner may grant an emergency continuance on less than five days notice to the person requesting the hearing and also the arresting officer in a DUI hearing for unexpected personal emergencies of the person, attorney, arresting officer, or subpoenaed witnesses. An emergency situation requiring the services of an arresting officer en route to a hearing qualifies as an unexpected personal emergency. Any emergency continuance request may be made by telephone but also must be submitted in writing. The written request must be received by the Division no later than five (5) days after the date the hearing was scheduled or the provisions of Subsection 3.7 will be applied as if the party requesting the continuance failed to appear.

It is this "emergency continuance" procedure that the appellee relied upon in continuing the appellant's DMV hearing. However, a straightforward reading and application of Rule 3.8.4 demonstrates that the appellee had no grounds under Rule 3.8.4 to grant a continuance.

Trooper Adkins did not have an "unexpected personal emergency." Trooper Adkins'

magistrate court hearings were fully expected. Trooper Adkins had received two months' notice of the hearings. Any experienced police officer would expect that a series of hearings on seventeen cases, the last of which was scheduled to *begin* at 11:30 a.m., would not likely conclude in time for the officer to attend a DMV hearing at a distant location that was to begin at 12:30 p.m.

Nor was the reason for the Trooper's asserted "emergency," an "emergency situation requiring the services of an arresting officer en route to a hearing," which is also provided in Rule 3.8.4. Rather, the magistrate court hearings were official scheduled business.

Trooper Adkins therefore did not demonstrate grounds for a continuance pursuant to Rule 3.8.4; and the DMV should not have granted a continuance of the October 4, 2004 hearing on that basis.

■ In Syllabus Point 1 of *Abshire v. Cline*, 193 W.Va. 180, 455 S.E.2d 549 (1995), Justice Cleckley stated, "A driver's license is a property interest and such interest is entitled to protection under the Due Process Clause of the West Virginia Constitution."[4]

This Court has addressed claims of prejudicial delay and the violation of due process by the DMV in connection with driver's license proceedings. In *State ex rel. Cline v. Maxwell*, 189 W.Va. 362, 432 S.E.2d 32 (1993), a circuit court dismissed DMV license revocation proceedings due to excessive delay by the DMV in holding revocation hearings. This Court held that dismissal was too strong of a remedy, because the licensees had not shown "how the delay prejudiced their ability to defend themselves." 189 W.Va. at 368, 432 S.E.2d at 38. In *Cline*, we granted a moulded writ of prohibition requiring the DMV to temporarily return regular driver's licenses to drivers if hearings were reasonably delayed—"to *shift the burden of the delay back to the Department*." (Empha-

---

3. The appellant's brief asserts that Trooper Adkins was aware that the appellant had retained an expert for the DMV hearing.

4. In *Abshire*, this Court held that it was a denial of due process for the DMV to strictly apply a five-day rule to deny a continuance to a licensee whose counsel had acted reasonably in requesting the continuance.

sis added.) 189 W.Va. at 367, 432 S.E.2d at 37.[5]

■ In the instant case the DMV argues that dismissal of the driver's license suspension proceedings against the appellant is an excessive sanction. The DMV suggests that the appellant can simply come to another hearing with his expert and other witnesses. The appellant, however, alleges—and this allegation is uncontradicted—that he cannot afford to pay his expert to come to another hearing; nor, he further argues, should he have to incur this burden twice, inasmuch as it was the DMV's improper action in granting the continuance that led to a denial of the appellant's due process rights.

In an analogous situation, this Court has recognized that a proper remedy for a party's failure to appear at a deposition was an order requiring the culpable party to pay for an expert witness' fees and travel costs to attend the deposition, and related attorney fees. *Cattrell Companies, Inc. v. Carlton, Inc.*, 217 W.Va. 1, 15, 614 S.E.2d 1, 15 (2005).

■ This Court stated in *Rosier v. Garron, Inc.*, 156 W.Va. 861, 875, 199 S.E.2d 50, 58 (1973) that "to the extent possible, under modern concepts of jurisprudence, legal contests should be devoid of those sporting characteristics which gave law the quality of a game of forfeits or trial by ambush." *See also Hinchman v. Gillette*, 217 W.Va. 378, 385, 618 S.E.2d 387, 394 (2005). In other words, the law favors the resolution of cases on their merits. Dismissal of the license suspension proceedings against the appellant, under the facts of the instant case, would run counter to this principle.

■ Because we have not hesitated to apply the principle favoring the resolution of matters on their merits for the benefit of the appellee DMV, this principle must also be

applied for the benefit of the appellant licensee. Especially because the important property interest of a driver's license is at stake, the DMV must conduct license suspension hearings in a fashion that assures the due process right of licensees to a tribunal where both sides are able to fully and fairly present their evidence before a neutral hearing examiner who does not act to favor or advance the cause of either side. *See Abshire v. Cline, supra.*

In the instant case, "resolution on the merits" means resolution of the appellant's appeal after a hearing in which the evidence and expert testimony that the appellant was prepared to present on October 4, 2004, when the hearing was improperly continued, may be presented by the appellant and his counsel. The DMV may not be permitted to have the unfair advantage of its erroneous ruling on the appellant's request for a continuance at a license suspension hearing.

■ Based on the foregoing reasoning, we hold that where the West Virginia Department of Motor Vehicles has improperly delayed a driver's license revocation proceeding held pursuant to *W.Va.Code*, 17C–5A–2 [2004] and thereby denied due process of law to a licensee, a licensee who has incurred substantial expenses and fees as a result of the improper delay and denial may recover the party's expenses and fees so incurred from the DMV in order to place the licensee in the position in which he or she would have been absent the improper granting of a continuance by the Department.

Applying this principle, we conclude that the circuit court's denial of the requested writ of prohibition in the instant case must be reversed; because absent such payment of the appellant's expenses and fees, the DMV would be acting in excess of its jurisdiction in conducting a hearing that violates

---

5. Our decision in *State ex rel. Cline, supra*, was cited in *Hickey v. North Dakota Dept. of Health*, 536 N.W.2d 370, 372 (N.D.1995) for the proposition that: "Generally, to warrant dismissal of administrative proceedings for delay, a party must show not only unreasonable or unconscionable delay by the government in initiating, conducting or concluding the proceedings, but also that the party's ability to defend against the allegations was substantially prejudiced by the de-

lay." *See also* Syllabus Point 1, *In re Burks*, 206 W.Va. 429, 525 S.E.2d 310 (1999) ("A law enforcement officer's failure to strictly comply with the DUI arrest reporting time requirements of *W. Va.Code*, 17C–5A–1(b) [1994] is not a bar or impediment to the commissioner of the Division of Motor Vehicles taking administrative action based on the arrest report, unless there is actual prejudice to the driver as a result of such failure.").

the appellant's due process right to a full and fair hearing on the merits of his case.

## IV.

### Conclusion

We reverse the ruling of the Circuit Court of Kanawha County, and remand this case with instructions to grant a writ of prohibition requiring the DMV to pay the expert witness fees, attorney fees, and travel costs incurred by the appellant as a result of the DMV's continuance of the October 4, 2004 administrative hearing, including the appellant's attorney fees incurred as a result of the instant proceeding in prohibition and appeal.[6]

Reversed and Remanded with Instructions.

MAYNARD, Justice, dissenting.
(Filed June 30, 2006)

Although I had misgivings about the impact of the majority opinion, I originally did not reserve a dissent in this case. However, after serious reflection and considering the likely impact of this decision on the disposition and trial of DUI cases, I feel compelled to dissent.

I am now concerned that some lawyers will use the majority opinion to attempt to recover fees in almost every instance where there is a continuance in a DUI administrative hearing. Such a consequence would unfairly punish the Division of Motor Vehicles on those occasions when continuances are unavoidable. Also, when the need for a continuance arises, the Division may now be tempted to simply dismiss the license revocation proceeding rather than face the possibility of being forced to pay a drunk driver his or her hearing fees and costs. If this were to occur, revoking the licenses of drunk drivers would become much more difficult and, as a result, our State roadways would become much more dangerous. Finally, the necessity of avoiding continuances in license revocation hearings will likely put an additional strain on the already harried routines of hardworking law enforcement officers who are frequently summonsed to be in two different courts, sometimes miles apart, on the same day or at the same time.

In sum, I now believe that the majority opinion will have the unintended effect of making the lives of drunk drivers easier and the work of the DMV and law enforcement officers harder, which is the exact opposite of what the law should do. Accordingly, I dissent.

BENJAMIN, Justice, concurring.
(Filed July 31, 2006)

Present in this case is an issue fundamental to our justice system: Should procedural rules for administrative hearings be enforced and applied equally to all persons, including the administrative agency, itself? Most certainly, they should. Neither an administrative agency, nor any other governmental entity, is entitled by virtue of being the government to avoid the effect of procedural rules simply by ignoring the requirements of such rules—rules which private citizens must follow. I cannot conceive any understanding of basic constitutional principles or the specific statutory law applicable herein which permits a different conclusion.

By statute, the Legislature established a procedural mechanism for the granting of continuances in administrative license revocation cases such as this. *See* W.Va.Code 17C–5A–2(b).[1] By this statutory section, the Department of Motor Vehicles ("D.M.V.") was required to develop further procedural rules setting forth the requirements for continuances. The Legislature spoke with clarity:
> . . . and such policies shall be enforced and applied to all persons *equally*.

*Id.* [Emphasis added.] There is no equivocation or ambiguity in this statutory command.

---

**6.** Any dispute regarding the amount of fees and expenses should be resolved in the first instance by the Circuit Court of Kanawha County. The DMV, of course, has the option of dismissing the license revocation proceedings instead of payment of the appellant's fees and expenses.

**1.** The Legislature has determined to afford hearings for the appeal of the mandatory suspension of a driver's license in a number of circumstances. For example, a conviction for driving under the influence of alcohol, controlled substances or drugs results in the automatic suspension of a person's driver's license. *See*, W. Va. Code § 17C–5A–1a (2004), *Stump v. Johnson*, 217 W.Va. 733, 619 S.E.2d 246 (2005). Likewise, offenses such as habitual reckless or negligent driving, multiple convictions for driving offenses and failure to pay child support also may result in the mandatory suspension of a person's driver's license without a preliminary hearing. W. Va.Code §§ 17B–3–6 (a)(1997). A post-suspension hearing is required upon timely request of

Nor could there be in view of the Fourteenth Amendment to the United States Constitution.

Here, the D.M.V. seeks to avoid the operation against it of its own rules; rules which it had enacted, rules which the Legislature approved, and rules which the D.M.V. applies to citizens such as the Appellant herein. Appellant did everything he was obligated to do under the D.M.V.'s procedural rules to ensure that he could proceed with his hearing. The D.M.V. did not, however. Notwithstanding its failure to comply with its own procedural rules, the agency now seeks to avoid the application against it of its own rules. Our system of justice does not sanction such a stark contrast in the procedure which a citizen must follow to enforce his or her rights and the procedure which the State must follow to deprive the citizen of such rights. Simply stated, a governmental entity is not above the law and is not above the procedures necessary to obtain justice. No free society could long endure if anything else were the case.

There can be little doubt that an accusation of driving under the influence of an

intoxicant is the type of charge which does not engender public sympathy. Charges of criminal or other wrongdoing do not garner public support, and never will. In view of this, it certainly would be both expedient and, in some cases, popular for the State if it were able to act against a citizen simply based upon accusations of misconduct alone. Indeed, that is exactly what is often the practice elsewhere in the world. But, not here. The true measure of the adequacy of the mechanisms which protect a right is not whether such mechanisms are enforced and applied in popular cases, but whether such mechanisms are enforced and applied in unpopular cases. The equal enforcement and application of procedure in administrative hearings is fundamental to our system of justice. I concur with the majority in applying and enforcing such procedures equally in this case.[2]

the person whose license has been suspended. W. Va.Code § 17B–3–6(d). A license may also be suspended for failure to pay certain court fees and costs, the return of the check paying vehicle registration and license fees, violation of student attendance requirements, and being involved in a motor vehicle accident without having valid liability insurance. *See*, W. Va.Code § 17B–3–3a (2002); W. Va.Code § 17B–3–3c (2005); W. Va. Code § 17D–2A–7 (2006); 91 C.S.R. 5 (2006). Hearings arising from a challenge to many of these suspensions are limited in scope to the proper identity of the driver whose license has been suspended. *See*, 91 C.S.R. 5 (2006).

**2.** While I share Justice Maynard's concern that some may seek to misuse the majority opinion in

this case to attempt to recover fees when the D.M.V. seeks continuances or when delays are otherwise needed, I believe such a reading of the majority decision would be incorrect and greatly misguided. The majority opinion, in my opinion, does nothing more than hold that the rules which apply to continuances of administrative hearings should be enforced equally as written to all parties. These rules expressly anticipate the need for continuances and, more importantly, the necessity for "emergency continuances." See Rules 3.8.1 and 3.8.4. They also anticipate the obligation of the parties to be considerate to each other and to the administrative system.