513 S.E.2d 718

**STATE of West Virginia, Appellee,**

v.

**Robert Eugene CARTER, Appellant.**

No. 25186.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 12, 1998.

Decided Dec. 11, 1998.

Pamela Games–Neely, Esq., Prosecuting Attorney, Christopher C. Quasebarth, Esq., Assistant Prosecuting Attorney, Martinsburg, West Virginia, Attorneys for the Appellee.

Thomas H. Sayre, Esq., Law Offices of Thomas H. Sayre, Front Royal, Virginia, Attorney for the Appellant.

MAYNARD, Justice:

The appellant, Robert Eugene Carter, appeals the September 26, 1997 final order of

the Circuit Court of Berkeley County, West Virginia, wherein he was sentenced for the conviction of two counts of malicious assault on a correctional officer and one count of battery upon a correctional officer. He contends he should not have been brought to trial because the State violated the three-term rule, W.Va.Code § 62–3–21 (1959). The State argues it complied with the three-term rule because the appellant had not been arraigned, even though he had been indicted, for more than three regular terms of court before he was brought to trial. We agree with the State, and, therefore, affirm the judgment of the circuit court.

The appellant was in federal custody pending federal trial for bank robbery and other charges while being detained at the Eastern Regional Jail in Martinsburg, West Virginia. On August 28, 1994, the appellant and two other inmates instigated an assault on four correctional officers. The incident began when Officer Floyd Ackerman observed two inmates cleaning up what appeared to be blood on the floor of a cell. Officer Ackerman called the shift supervisor, Officer Benjamin Shreve, Jr., who responded with Officer Gerald Rose, Officer Ron Lloyd, and Officer Gary Reed. Officer Shreve instructed the inmates in the day room to lock down in their individual cells. Three inmates, including the appellant, refused to return to their cells.

The appellant struck Officer Shreve in the face, knocking him unconscious. The other three correctional officers were attacked as they tried to assist Officer Shreve and move him from the area. The bones that surround Officer Shreve's eye were broken and his nose was shattered; he suffered a spinal concussion and a brain concussion. Officer Shreve was transported by ambulance to City Hospital in Martinsburg, West Virginia. From there he was flown to Washington Hospital Center in Washington, D.C. Officer Lloyd suffered facial injuries, including a broken nose, rib injuries, and a broken thumb. Officer Reed suffered broken ribs and multiple bruises on his face, arms, and legs. Officer Rose suffered minor injuries.

On October 28, 1994, the appellant was indicted on four counts of malicious assault in violation of W.Va.Code § 61–2–10b (1998),[1] with each count pertaining to a different officer.[2] His pre-trial motions included a motion to dismiss for violation of the three-term rule pursuant to W.Va.Code § 62–3–21.[3] By order entered July 14, 1997, the court denied the motion. A jury trial was held for the appellant on July 16–17, 1997. He was convicted of two counts of malicious assault and one count of battery. On September 26, 1997, the appellant was sentenced to three to fifteen years in prison on each of the assault convictions and to one year in prison for battery, to be served consecutively. The appellant appealed his conviction to

1. W.Va.Code § 61–2–10b(a) (1998) states:

(a) *Malicious assault.*—Any person who maliciously shoots, stabs, cuts or wounds or by any means causes bodily injury with intent to main, disfigure, disable or kill a police officer, conservation officer, humane officer, emergency medical service personnel, firefighter, state fire marshal or employee, county correctional employee or state correctional employee acting in his or her official capacity and the person committing the malicious assault knows or has reason to know that the victim is a police officer, conservation officer, humane officer, emergency medical service personnel, firefighter, state fire marshal or employee, county correctional employee, or state correctional employee acting in his or her official capacity, is guilty of a felony and, upon conviction, shall be confined in a correctional facility for not less than three nor more than fifteen years.

2. The count of the indictment which charged malicious assault on Officer Gary Reed was dis-

missed by the State prior to trial due to Officer Reed's failure to appear despite service.

3. W.Va.Code § 62–3–21 (1959) states in pertinent part:

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict[.]

this Court. We granted the petition for appeal solely on the issue of the three-term rule.

On appeal, the appellant contends the circuit court erred in holding that the three-term rule, W.Va.Code § 62–3–21, was not violated. He alleges this error because he was not tried within three terms of court after he was indicted. The State argues the three-term rule does not apply to the appellant because he was not arraigned until March 6, 1997. We agree.

The facts in the record regarding the appellant's history while in federal custody are sketchy at best. The appellant had one prior offense. On October 13, 1989, he committed the offense of aggravated robbery of a bank. He pleaded guilty in U.S. District Court to one count of bank robbery and was sentenced to forty-eight months of incarceration with five years of supervised release. In April of 1993, the appellant was released from custody on probation. Then in 1994, he was charged with bank robbery, conspiracy, and use of a firearm in a crime of violence, all federal charges. He was incarcerated in the Eastern Regional Jail pending trial on these charges when the altercation with the correctional officers occurred. In December 1994, he was tried and acquitted of the federal charges. Meanwhile, during the time the appellant was on probation, he tested positive on two occasions for drug use. He also failed to report to his supervising probation officer. As a result, at the completion of the federal criminal trial, the appellant, while still in federal custody, was removed from West Virginia to face federal parole revocation. His probation was revoked, and he was sent back to the penitentiary for an additional thirty-six months of incarceration, which began on January 31, 1995. It seems West Virginia lost track of the appellant at this point but diligently attempted to have him returned.

The appellant was in continuous federal custody from the time of the altercation with the correctional officers until he was secured by the State of West Virginia and brought before the circuit court for arraignment on March 6, 1997. Between indictment and actually securing custody of the appellant, West Virginia attempted to have the appellant returned to face the state charges. The State requested a capias and the court entered an order on November 17, 1994 which states, "It appearing to the Court that the Defendant failed to appear for arraignment herein, the Court hereby ORDERS, a Capias to issue for Defendant's failure to appear in this matter[.]" A continuing capias was ordered by the court on January 3, 1995. That order states, "[T]he Court was advised that this defendant is still within federal custody. The federal authorities had notified the State in error that he was being released to our detainer. Accordingly, it is ORDERED that the Capias against this defendant shall continue." In its brief to this Court, the State says a detainer was lodged with the United States Department of Justice on May 15, 1995. Once again the State moved for a capias on May 19, 1995. On June 9, 1995, the court ordered that the capias continue and that the matter be retired to the active capias docket. The State moved for a capias on November 3, 1995, which request was granted and order was entered by the court on November 15, 1995.

The State thereafter learned the appellant had been transferred to a federal facility in Colorado. The State requested a warrant seeking the extradition of the appellant from the State of Colorado. The Governor issued the warrant on December 18, 1996. The appellant was then brought to the jurisdiction and custody of the State of West Virginia, where he was arraigned on March 6, 1997. As we stated previously, his trial was held on July 16 and 17, 1997, and he was sentenced on September 26, 1997.

■ The issue that we must resolve in this case is whether the three-term rule began to run when the appellant was indicted or when he was arraigned. Our case law on this issue is somewhat confusing. In *State v. Kellison*, 56 W.Va. 690, 47 S.E. 166 (1904), *overruled on other grounds by State ex rel. May v. Boles*, 149 W.Va. 155, 139 S.E.2d 177 (1964), the accused claimed he should be discharged from prosecution for violation of the three-term rule. He was indicted by order entered October 4, 1899. No other order was entered in the case until October 2, 1901, when the accused was arraigned and offered his plea to the court. This Court held that the

accused was not within the provisions of the statute because the record did not show that more than three terms of court had passed without a trial after he was taken into custody, in other words, he had not been arraigned. In Syllabus Point 1 of *Kellison, id.,* this Court held,

> The fact that the record in a felony case shows that more than three terms of the court have passed without a trial, after the finding of the indictments, affords no ground for the discharge of the accused, under section 25 of chapter 159 of the Code of 1899, from prosecution for the offense with which he is charged. It must further appear that he has been held for trial, as well as charged with the crime, for such period, without a trial.[4]

However, in Syllabus Point 1 of *Ex parte Bracey,* 82 W.Va. 69, 95 S.E. 593 (1918), this Court held,

> One charged with crime is entitled to be forever discharged from prosecution upon such charge, if there be three regular terms of the court in which the indictment is pending after an indictment is found against him without a trial thereof, unless the failure to try him is because of some of the reasons contained in section 25 of chapter 159 of Code 1913 (sec. 5601) excusing such delay.

The facts in *Bracey* show the Court was considering a different issue from that presented in the case at bar.

In *Bracey,* the accused filed a demurrer to the indictments. The demurrer was to be submitted to the circuit court on briefs instead of oral argument. The briefs were not all timely filed and the case was continued from the March term of court to the May term. The court then took the demurrer under advisement and continued the case to the next term of court. The demurrer was finally overruled, the accused pleaded not guilty, and the case was set for trial in the succeeding November term of court. The accused had insisted upon a trial in the September term of court. The trial still did not take place in the November term of court. The prosecutor became ill and the trial was continued to the January term. The issue presented to the Court was whether the burden was on the accused to show that the failure to try him within the time prescribed in the statute was because of any of the exceptions contained therein. The *Bracey* Court held that when an accused seeks to be discharged from further prosecution due to a delay in bringing him to trial and the record fails to disclose the reason therefor, the obligation rests upon the accused to show that the continuances were not for any of the reasons which excuse the delay.

Counsel for the State then argued that the failure to bring the accused to trial during the March, May, and July terms of court was "excused because of the interposition of a demurrer to the indictment." *Id.* at 75, 95 S.E. at 596. The *Bracey* Court concluded, "The state must be as ready to make good its indictment as matter of law when the same is challenged by demurrer, as to make it good in fact when challenged by a plea of not guilty." *Id.* at 76, 95 S.E. at 596. In essence the Court held that filing a demurrer did not toll the running of the three-term rule.

More recently, this Court commented on *State v. Adkins,* 182 W.Va. 443, 388 S.E.2d 316 (1989), by stating, "[W]e tacitly ruled that *W.Va.Code,* 62–3–21 [1959], the three-term rule, is activated by an indictment, regardless of whether the indictment is subsequently dismissed." *State ex rel. Webb v. Wilson,* 182 W.Va. 538, 390 S.E.2d 9 (1990). When this comment is read in context, clearly neither *Adkins* nor *Webb* has any application to the facts presented in the case *sub judice. Adkins* involved several defendants who were indicted on April 7, 1988 for misdemeanor and felony election law violations. In May 1989, the defendants filed motions to dismiss the indictments for failure to provide a speedy trial. On June 3, 1989, the State obtained superseding indictments. The State subsequently moved to dismiss the 1988 indictments, claiming these indictments had been superseded by the 1989 indictments. The 1988 indictments were dismissed by the court due to improper impaneling of the special grand jury.

The defendants moved to dismiss the 1989 indictments on the grounds that trials were

---

4.  Chapter 159 Section 25 of the Code of 1899 is substantially similar to W.Va.Code § 62–3–21 (1959); this section was amended to include misdemeanors as well as felonies.

barred by the three-term rule. The court dismissed the 1989 indictments as barred by the three-term rule. The issue before this Court was whether the 1989 indictments were bad or insufficient, pursuant to W.Va. Code 58–5–30 (1966), so as to allow the State to appeal the dismissal. The *Adkins* Court specifically stated they were concerned with an analysis of the State's right to appeal rather than with a review of the three-term rule. The Court determined the prosecution rather than the underlying indictment was bad and the State had no right to appeal. "To hold otherwise would allow the State to simply circumvent the three term rule by securing superseding indictments." *Adkins* at 447, 388 S.E.2d at 321.

The petitioners in *Webb* were indicted on October 26, 1987 in connection with a political corruption investigation. After more than three unexcused regular terms of court had expired, the indictments were dismissed as void due to an improperly impaneled grand jury. The petitioners were reindicted for the same charges on July 18, 1989. The sole issue before this Court was whether the State could reindict an accused after three unexcused terms of court expired without bringing the accused to trial on the original indictment, which was dismissed as void because of the manner in which the grand jury was impaneled. The State assumed it could reindict because the dismissal of the original indictments was not based on the three-term rule. The *Webb* Court held that the State could not reindict the petitioners when the original indictments were dismissed as void after three unexcused terms of court had passed. *Webb* at 544, 390 S.E.2d at 15. *Adkins* and *Webb* obviously dealt with reindictment, which is not the issue in the case at bar.

The issue in the case *sub judice* is whether the three-term rule was violated when the appellant was not tried within three terms of court after he was indicted, but not arraigned. W.Va.Code § 62–3–21 should be interpreted just as it is written. This section clearly states that after an accused has been (1) charged with a crime, and (2) remanded to a court of competent jurisdiction for trial or arraigned, then if the three-term rule is violated, the accused will be discharged from prosecution for the crime so charged. We

therefore hold that pursuant to W.Va.Code § 62–3–21 (1959), when an accused is charged with a felony or misdemeanor and arraigned in a court of competent jurisdiction, if three regular terms of court pass without trial after the presentment or indictment, the accused shall be forever discharged from prosecution for the felony or misdemeanor charged unless the failure to try the accused is caused by one of the exceptions enumerated in the statute.

In the case *sub judice,* the appellant was in continuous federal custody from the time he was indicted until he was secured by the State of West Virginia and brought before the circuit court for arraignment on March 6, 1997. Following arraignment, he was brought to trial and convicted during the very next term of court. Three terms of court did not pass without trial following indictment and arraignment; therefore, the three-term rule was not violated.

The judgment of the Circuit Court of Berkeley County is affirmed.

Affirmed.

Chief Justice DAVIS and Justices WORKMAN, STARCHER and McCUSKEY joined the Opinion of the Court.

Justice McGRAW did not participate in the decision of this case.